# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| RAJESH M. SHAH, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>ZIMMER BIOMET HOLDINGS, INC., DAVID C. DVORAK, DANIEL P. FLORIN, and ROBERT J. MARSHALL JR.,<br><br>      Defendants. | Case No.: 3:16-cv-815<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rajesh M. Shah ("Plaintiffs"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Zimmer Biomet Holdings, Inc., ("Zimmer" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Zimmer; and (c) review of other publicly available information concerning Zimmer.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that acquired Zimmer's securities between September 7, 2016, and October 31, 2016, inclusive (the "Class Period"), against the Defendants, seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Zimmer, through various subsidiaries and related entities, designs develops and manufactures medical equipment. The company offers orthopedic and dental reconstructive implants, spinal implants, trauma products, and related surgical products.

3. Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that supply chain problems led to a decrease in order fulfillment rates, most notably within Zimmer's knee and hip portfolios; (2) that, as such, the Company would not achieve its revenues and profit forecast; and (3) that, as a result of the foregoing, Defendants' statements about Zimmer's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

4.      On October 31, 2016, the Company published a press release reporting third quarter 2016 financial results. The Company reported net sales of $1.83 billion, and lowered guidance for the full year 2016 to $7.630 billion to $7.650 billion, down from the $7.68 billion to $7.715 billion estimated in July.  The Company reported that the sales weakness stemmed from a change in the supply chain infrastructure, which led to shortfalls in the availability of implants and instrument sets during the quarter.

5.      Following the press release, in a conference call with investors, the Defendant Florin stated: "Third quarter revenue was below our expectations, primarily due to execution issues within our large joint supply chain, which led to a degradation in order fulfillment rates late in the quarter as well as our performance in dental. . . . As a consequence, we underestimated demand for certain key cross-sell brands within our existing customer base, leading to a depletion of our safety stocks and also affecting our ability to capitalize on new customer opportunities."

6.      On this news shares of Zimmer fell $17.15 per share, or nearly 14%, to close on October 31, 2016 at $105.40 per share.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District. Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. In addition, the Company's principal executive offices are located in this Judicial District.

11. In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12. Plaintiff Rajesh M. Shah, as set forth in the accompanying certification, incorporated by reference herein and attached hereto as Exhibit A, purchased Zimmer common stock during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13. Defendant Zimmer is a Delaware Corporation headquartered in Warsaw, Indiana. Zimmer's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "ZBH."

14. Defendant David C. Dvorak ("Dvorak") is and, throughout the Class Period, was the Company's Chief Executive Officer.

15. Defendant Daniel P. Florin ("Florin") is and, throughout the Class Period, was the Company's Chief Financial Officer.

16. Defendant Robert J. Marshall Jr. ("Marshall") is and, throughout the Class Period,

was the Company's Vice President of Investor Relations and Treasurer.

17.     Defendants Dvorak, Florin, and Marshall (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Zimmer's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Zimmer, through various subsidiaries and related entities, designs develops and manufactures medical equipment. The company purportedly offers orthopedic and dental reconstructive implants, spinal implants, trauma products, and related surgical products.

### Materially False and Misleading Statements Issued During the Class Period

19.     The Class Period begins on September 7, 2016.  On that day the Company participated in the Wells Fargo Securities Health Care Conference.  During the conference, Defendant Marshall incorporated by reference and affirmed the Company's guidance for the remainder of 2016, stating:

> [W]e've already talked about the top line, in cost of goods, one of the things that we do note and have stated some of our – the hedging contracts, the gains that we've

> been experiencing over the last number of years, we do start to feel that as an incremental headwind, particularly we noted that in the second quarter, and then it would – obviously, *it's also embedded in our guidance from the second half of the year as it steps down in Q3 and Q4, and then again in 2017*. *These are all numbers that you can find in our periodic filings*.

(Emphasis added.) As announced earlier by the Company on July 28, 2016, revenue guidance for the full-year 2016 was $7.680 billion to $7.715 billion, and diluted earnings per share guidance was $1.50 to $1.75.

20. In addition, discussing the Company's hip and knee business at the conference, Defendant Marshall stated:

> Outside the United States, while hip and knee did slow down sequentially in the United States from Q1 to Q2, *we saw almost an equal and offsetting uptick in EMEA. Asia-Pac has been extremely stable*. Our performance may not be necessarily indicative of the entire market, but *when we think about Asia-Pacific in the second quarter, we had growth across all major countries, which was important, including China*. *And for us, that was – has continued to be a stable growth environment for us*. Again, it has more to do it with . . . product mix, but the point being is that when you take it all together, it leaves us with a good sense of confidence in the sense that the market is relatively stable.

(Emphasis added.)

21. The above statements identified in ¶¶19-20 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that supply chain problems led to a decrease in order fulfillment rates, most notably within Zimmer's knee and hip portfolios; (2) that, as such, the Company would not achieve its revenues and profit forecast; and (3) that, as a result of the foregoing, Defendants' statements about Zimmer's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

22. On October 31, 2016, the Company published a press release reporting third quarter 2016 financial results. The Company reported net sales of $1.83 billion, and lowered guidance for the full year 2016 to $7.630 billion to $7.650 billion, down from the $7.680 billion to $7.715 billion. The Company reported that the sales weakness stemmed from a change in the supply chain infrastructure, which led to shortfalls in the availability of implants and instrument sets during the quarter.

23. Following the press release, in a conference call with investors, the Defendant Florin elaborated on the poor third quarter performance:

> Third quarter revenue was below our expectations, ***primarily due to execution issues within our large joint supply chain, which led to a degradation in order fulfillment rates late in the quarter*** as well as our performance in dental. As noted by David, customer demand was strong in the quarter but ***certain aspects of our supply chain integration impacted our ability to effectively respond to shifting product mix, most notably within our knee and hip portfolios***.
>
> As a consequence, we underestimated demand for certain key cross-sell brands within our existing customer base, leading to a depletion of our safety stocks and also affecting our ability to capitalize on new customer opportunities. We are working diligently to enhance our supply chain processes and execution, particularly in the areas of demand forecasting, global inventory tracking, and asset deployment systems while we replenish our safety stock levels. However, these issues have some carryover effect into the fourth quarter, which I will address shortly in the context of our updated Q4 guidance.

24. On this news shares of Zimmer fell $17.15 per share, or nearly 14%, to close on October 31, 2016 at $105.40 per share.

**CLASS ACTION ALLEGATIONS**

25. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired Zimmer's securities between September 7, 2016, and October 31, 2016, inclusive, and who were

6

damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

26. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Zimmer's common stock actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Zimmer shares were traded publicly during the Class Period on the NYSE. As of October 28, 2016, Zimmer had 200,299,566 shares of common stock outstanding. Record owners and other members of the Class may be identified from records maintained by Zimmer or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Zimmer; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

30. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

31. The market for Zimmer's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Zimmer's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Zimmer's securities relying upon the integrity of the market price of the Company's securities and market information relating to Zimmer, and have been damaged thereby.

32. During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Zimmer's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or

8

misleading because they failed to disclose material adverse information and/or misrepresented the truth about Zimmer's business, operations, and prospects as alleged herein.

33. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Zimmer's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

34. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

35. During the Class Period, Plaintiff and the Class purchased Zimmer's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

36. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Ladd, by virtue of his receipt of information reflecting the true facts regarding Zimmer, his control over, and/or receipt and/or modification of Zimmer's allegedly materially misleading misstatements and/or their associations with the Company which made him privy to confidential proprietary information concerning Zimmer, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

37. The market for Zimmer's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to disclose, Zimmer's securities traded at artificially inflated prices during the Class Period. On October 10, 2016, the Company's stock price closed at a Class Period high of $132.74 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Zimmer's securities and market information relating to Zimmer, and have been damaged thereby.

38. During the Class Period, the artificial inflation of Zimmer's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading

statements about Zimmer's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Zimmer and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39. At all relevant times, the market for Zimmer's securities was an efficient market for the following reasons, among others:

(a) Zimmer stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b) As a regulated issuer, Zimmer filed periodic public reports with the SEC and/or the NYSE;

(c) Zimmer regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Zimmer was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

40. As a result of the foregoing, the market for Zimmer's securities promptly digested current information regarding Zimmer from all publicly available sources and reflected such

information in Zimmer's stock price. Under these circumstances, all purchasers of Zimmer's securities during the Class Period suffered similar injury through their purchase of Zimmer's securities at artificially inflated prices and a presumption of reliance applies.

41. A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

42. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking

statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Zimmer who knew that the statement was false when made.

### FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder
### Against All Defendants

43. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Zimmer's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

45. Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Zimmer's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a

continuous course of conduct to conceal adverse material information about Zimmer's financial well-being and prospects, as specified herein.

47. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Zimmer's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Zimmer and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48. Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49. Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Zimmer's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50. As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Zimmer's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Zimmer's securities during the Class Period at artificially high prices and were damaged thereby.

51. At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems

that Zimmer was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Zimmer securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52. By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

54. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55. Individual Defendants acted as controlling persons of Zimmer within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and

had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57. As set forth above, Zimmer and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a) Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b) Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated:  December 2, 2016

*/s/ Offer Korin*
Offer Korin, Indiana Atty. No. 14014-49
**KATZ & KORIN, PC**
334 North Senate Avenue
Indianapolis, IN  46204
317-464-1100 (tel.)
317-464-1111 (fax)
E-mail:  okorin@katzkorin.com

Lionel Z. Glancy (*Pro Hac Vice to be filed*)
Robert V. Prongay (*Pro Hac Vice to be filed*)
Lesley F. Portnoy (*Pro Hac Vice to be filed*)
Charles H. Linehan (*Pro Hac Vice to be filed*)
**GLANCY PRONGAY & MURRAY LLP**
 1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160

*Attorneys for Plaintiff*