UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RAJESH M. SHAH, *et al*          )
                                 )
        Plaintiffs,              )
                                 )
        vs.                      )          Case No. 3:16-cv-815-PPS-MGG
                                 )
ZIMMER BIOMET HOLDINGS, INC.,    )
*et al*                          )
                                 )
        Defendants.              )

## OPINION AND ORDER

On September 26, 2018, I denied the motion to dismiss filed in this securities

fraud case by defendants Zimmer Biomet Holdings, Inc. (ZBH) and several of its

officers and directors (collectively "ZBH"). [DE 119.] An avalanche of filings followed.

First, ZBH filed two motions: 1) a Motion to Amend the Court's Opinion and Order to

Include a Certification Under 28 U.S.C. § 1292(b);  and 2) a Motion to Stay Proceedings

Pending Appeal. [DE 120.] After extensions to respond, a sur-reply and (and "sur-sur-

reply"), a notice of supplemental authority and a response, the briefing was completed

— or so I thought. [*See* DE 121, 124, 125, 126, 145, 147, 149-1, and 155.] Additional

briefing followed. [*See* DE 165, 167, and 171.] On January 28, 2019, an oral argument was

held on the various motions, which are now ripe for decision. [DE 174.]

In summary, ZBH wants to take an interlocutory appeal from my denial of their

motion to dismiss and they seek a stay of discovery while the matter remains pending

before the Seventh Circuit. Defendants seek an immediate appeal on two issues: the first

is to what extent plaintiffs may base certain claims on a securities regulation known as

Item 303; and second, to what extent can plaintiffs in a securities fraud case rely on

allegations cribbed from another lawsuit to bolster their scienter allegations? As explained more fully below, because ZBH has failed to meet all of the requirements for an interlocutory appeal, its motion will be denied.

## Background

This order will assume some familiarity with the basic facts of this case on the part of the reader as set out in my prior Opinion and Order on the motions to dismiss [DE 119]. *See Shah v. Zimmer Biomet Holdings, Inc.,* 348 F. Supp.3d 821 (N.D. Ind. 2018). In short, this a securities fraud case in which plaintiffs have alleged that throughout 2016, ZBH lied to investors and issued false or misleading financial projections which the company knew would be impossible to achieve because of known issues at a facility ZBH calls "North Campus" — one of company's largest manufacturing centers. Plaintiffs allege that ZBH learned of these problems early in the year through its own internal audits but did not change the information it fed to the market even thought it had a duty to disclose. Plaintiffs further alleged that these issues were inevitably going to be discovered by the FDA — the company's regulator — during an audit later that year and that it was only a matter of time before the problems began to impact ZBH's revenue.

There's more: plaintiffs allege that when the company's financial misses materialized and were disclosed to investors, the company concocted a cover-up regarding the source of the problem which was only corrected after outside investment analysts caught wind of the company's problems at North Campus through their industry contacts. Finally, plaintiffs allege that because of these problems and

revelations, ZBH's stock plummeted, erasing over a billion dollars in market capitalization. Plaintiffs are individuals and organizations which traded in the company's stock during this period. They seek to represent a nationwide class of similarly situated persons.

## Discussion

Interlocutory appeals are discouraged because they bog down the efficient movement of litigation. They're akin to the frustration of watching a football game getting interrupted by replay challenges to a referee's decision — only the "replay" in the legal context comes a lot slower. Such appeals are not forbidden, but the bar is set very high to obtain one. Under 28 U.S.C. § 1292(b), a party "must show that 'exceptional circumstances' justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Hoffman v. Carefirst of Ft. Wayne, Inc.*, 2010 WL 3940638, at *2 (N.D. Ind. Oct. 6, 2010) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). It's a procedure that should be used sparingly and is "not intended as a vehicle to provide early review of difficult rulings in hard cases." *Giguere v. Vulcan Materials Co.*, 1988 WL 119064, at *1 (N.D. Ill. Nov. 3, 1988). It would be swell if the Court of Appeals could answer all the thorny legal questions early on in a case and make my job as a district court judge less demanding. But that's not how our system is designed to work, even in high-stakes complex cases such as this one.

Beyond the general principles outlined above, there are four statutory requirements which must be met before an interlocutory appeal of an issue is allowed: the issue must be (1) a question of law, (2) the question must be "controlling", (3) the

question must be "contestable", and (4) practically speaking, "its resolution must promise to speed up the litigation." *Ahrenholz v. Bd. Of Trustees of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). These are four independent requirements, meaning that they all must be satisfied or no interlocutory appeal may be taken. *Id.* And even then, when all four requirements have been met, an interlocutory appeal is not mandatory but is instead still within the discretion of the trial court. *See Swint v. Chambers County Comm'n,* 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals."); *MetLife Investors USA Inc. Co. v. Estate of Lindsey*, 2018 WL 925252, at *2 (N.D. Ind. Feb. 15, 2018).

Here, ZBH contends there are two issues which should be certified for interlocutory appeal. First, ZBH contends that I should certify the question of whether a private plaintiff may sustain a private right of action under Section 10(b) of the Securities Exchange Act of 1934 (and the related Rule 10b-5, used interchangeable throughout this opinion) based upon a company's disclosure obligations under what is known as Item 303 of SEC Regulation S-K. In short, does Item 303 impose a duty to disclose for purposes of a Section 10(b) claim? Second, ZBH seeks certification of the question whether plaintiffs can rely in their complaint on factual allegations taken from the complaint in another lawsuit. I will address each under the rubric of the four *Ahrenholz* factors.

## I.    Whether a Private Securities Fraud Action May be Based on Item 303 of SEC Regulation S-K.

The first question ZBH asks me to certify for interlocutory appeal relates to whether ZBH had a duty to disclose some of the information that plaintiffs contend was improperly concealed from the public during the class period. Specifically, ZBH frames the question as "whether and to what extent a private right of action can [be] based on disclosures required by Item 303 of Regulation S-K, 17 C.F.R. § 229.303(a)(3)(ii)." [DE 121 at 1.] Item 303 requires companies to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." 17 C.F.R. § 229.303(a)(3)(ii). As a secondary question, ZBH wants the Seventh Circuit to elaborate upon what Item 303's "reasonably expects" language means and what standard should apply if it were to find that Item 303 may serve as a basis for a Section 10(b) claim. [DE 121 at 7-8, DE 133 at 3-4.] Because the secondary question presupposes the first, if ZBH does not satisfy the four required elements for the main question, I need not address the secondary one.

Much of ZBH's argument is predicated on the fact that the Second, Third and Ninth Circuits have taken varying approaches on this issue. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94 (2nd Cir. 2015) (holding that Item 303 may be the basis for a duty to disclose and thus a Section 10(b) claim so long as materiality element is likewise is satisfied); *Oran v. Stafford*, 226 F.3d 275 (3rd Cir. 2000) (holding that a violation of Item 303 does not automatically give rise to a Section 10(b) or Rule 10b-5 violation); *In re*

*NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046 (9th Cir. 2014) (holding that Item 303 cannot be the source of a duty to disclose for purposes of a Section 10(b) claim). The Seventh Circuit has not weighed in on this specific question, but has signaled some support for the use of Item 303 as the basis of a duty to disclose. *See Gallagher v. Abbott Labs.*, 269 F.3d 806, 810 (7th Cir. 2001).

ZBH also notes that the Supreme Court granted certiorari in *Leidos, Inc. v. Indiana Pub. Ret. Sys.*, 137 S. Ct. 1395 (March 27, 2017)[1], in which this question was presented. But the case settled while pending before the Supreme Court and so the appeal was dismissed. *Leidos, Inc. v. Indiana Pub. Ret. Sys.*, 138 S. Ct. 2670 (2018). ZBH makes much of the Supreme Court's grant of certiorari. But "[t]he grant of certiorari on an issue does not suggest a view on the merits. We don't know how the Supreme Court is going to decide the issues on which it has granted review . . ., and the Supreme Court probably does not know given the fact that briefing has not even been completed in that case." *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1299 (11th Cir. 2007); *Fireking Sec. Prod., LLC v. Am. Sec. Prod. Co.*, 2017 WL 4867159, at *2 (S.D. Ind. Apr. 24, 2017) ("A district court attaches no significance to the fact that the Supreme Court has granted or denied *certiorari* in any given case."). Of course, this doesn't mean the circuit split ZBH has now identified is any less real.

An initial problem with ZBH's argument is that it did not really make this argument when it originally moved to dismiss Plaintiffs' Second Amended Complaint

---

[1] *Leidos* is the same case as *Ind. Pub. Retirement Sys. v. SAIC, Inc.*, 818 F.3d 85 (2nd Cir. 2016), discussed *infra*, but during the pendency of the litigation SAIC changed its name to Leidos.

("SAC"). A party that fails to raise an issue in its initial motion to dismiss cannot then raise it in a motion for an interlocutory appeal of an order denying that motion. *E.g.*, *Young v. Dart*, 2009 WL 2986109, at *2 (N.D. Ill. Sept. 15, 2009) (finding party forfeited defense and interlocutory appeal on said defense where it was not raised in motion to dismiss or summary judgment); *Murgia v. Reed*, 338 Fed. Appx. 614, 615 n.1 (9th Cir. 2009) ("This argument was not raised below in response to the 12(b)(1) motion to dismiss, and we decline to entertain the argument on this interlocutory appeal.").

Nowhere in ZBH's initial motion to dismiss did it argue that Item 303's disclosure obligation could not be the basis for a Section 10(b) claim as a matter of law. Instead, ZBH argued that plaintiffs had failed to sufficiently plead a violation of Item 303 in the first place. [DE 95 at 22-24.] That's a distinct argument and plaintiffs responded accordingly. In reply, ZBH argued that a violation of Item 303 cannot automatically satisfy Section 10(b)'s materiality requirement and that I should reject such a *per se* rule. [DE 110 at 7-8.] I agreed, and that is why I did not rule that a violation of Item 303 is a *per se* violation of Section 10(b). But that really wasn't the point. Plaintiffs never argued that a violation of Item 303 resulted in a *per se* violation of Section 10(b)—it plainly doesn't. Whether Item 303 imposes a duty to disclose such that it can be actionable under Section 10(b), on the one hand, and whether a violation of Item 303 satisfies Section 10(b)'s materiality requirement *per se,* on the other, is not the same question. That is one reason why they were separately discussed in my Opinion and Order. [*See* DE 119 at 25 (subsection titled "Was There a Duty to Disclose?") *and id.* at 32 (subsection titled "Have Plaintiffs Sufficiently Alleged Materiality?").] I assume

that is also why ZBH addressed the duty to disclose separately from materiality in its motion to dismiss briefing. [*See* DE 95 at 14-24 (arguing no duty to disclose) and DE 95 at 24-27 (arguing that regardless of any duty the alleged statements and information were not material).]

ZBH says it did not raise the argument in its initial motion because it did not know plaintiffs were basing their Section 10(b) claim on Item 303. This strikes me as implausible. ZBH structured their motion to dismiss arguments to apply to both Securities Act and Exchange Act claims and plaintiffs clearly spelled out in the SAC that they were basing their Exchange Act claims in part on Item 303's duty to disclose. [*See* DE 60 at ¶¶ 291-93, 322.] And even when ZBH did raise the issue in their reply, ZBH concedes it did not identify any circuit split, or call attention to the Supreme Court's grant of certiorari. ZBH instead cited *Oran* and *In re NVIDIA* for the argument that Item 303's disclosure requirements and materiality are distinct concepts, and that running afoul of Item 303's requirements does not, in and of itself, satisfy materiality. [DE 110 at 7-8.] As such, I would be well-within my rights to deem this issue waived or, at the very least, underdeveloped. *See Long v. Teachers' Retirement System of Illinois,* 585 F.3d 344, 349 (7th Cir. 2009); *Garg v. Potter,* 521 F.3d 731, 736 (7th Cir. 2008). But because of its importance and because ZBH did at least cite to *Oran* and *In re NVIDIA* (and thus arguably preserved the issue), I will address the issue on the merits.

Plaintiffs have based the duty to disclose for purposes of Section 10(b) here, in part, on the disclosure requirements of Item 303. As the Seventh Circuit stated "[w]e do not have a system of continuous disclosure. Instead firms are entitled to keep silent

(about good news as well as bad news) unless positive law creates a duty to disclose." *Gallagher*, 269 F.3d at 808. Furthermore, "[d]isclosure is required" by the securities laws "only when necessary 'to make ... statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011); *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n. 17 (1988) ("Silence, absent a duty to disclose, is not misleading under Rule 10b–5."). Thus, there are specific rules and regulations mandating what companies must disclose (Item 303 among them) in their securities filings. Nothing more, nothing less. And the laws further require that when they do speak (whether compelled to or not by regulations), companies must tell enough truth so as to not mislead. *See Basic*, 485 U.S. at 240, n.18 (discussing the "ever-present duty not to mislead").

That brings us to the substance of the circuit split concerning Item 303. In 2000, then-Judge Alito wrote for the Third Circuit that "a violation of SK-303's reporting requirements does not *automatically* give rise to a *material* omission under Rule 10b-5." *Oran*, 226 F.3d at 288 (emphasis added). In doing so, the court had earlier in its opinion found that the statements at issue to not be materially misleading, and then subsequently ruled that Item 303 did not provide a backdoor by which plaintiffs could allege materiality. *Id.* And as discussed below, both the Ninth and Second Circuits (which have taken opposing views on the issue) see themselves as aligned with *Oran* and its holding.

In 2014, the Ninth Circuit confirmed what it had "strongly suggested" in prior decisions and held "that a violation of Item 303 cannot be used to show a violation of

Section 10(b) and Rule 10b-5." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 (9th Cir. 2014). It based its holding primarily on the idea that Item 303 and the test for materiality "differ considerably." *Id.* at 1055. Because the standards differ, the Ninth Circuit held that Item 303 — which requires the disclose of "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact" 17 C.F.R. § 229.303(a)(3)(ii) — could not serve as the basis for a violation of Section 10b or Rule 10b-5. This is because those require "materiality," which depends "upon a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity." *Basic*, 485 U.S. at 238. In the Ninth Circuit's view, there was no way to reconcile that Item 303 and Section 10(b) have different standards, even if they are not addressing precisely the same category of information. In so holding, the court stated it was joining with the Third Circuit and its decision in *Oran*, even if that is not the precise holding of *Oran*. *In re NVIDIA*, 768 F.3d at 1055.

The following year, the Second Circuit announced a different view. In *Stratte-McClure*, it held that the use of Item 303 could form the basis of a duty to disclose, so long as the information in question was also or otherwise material. The Second Circuit saw its view as fully in line with the Third Circuit's *Oran* decision. *Stratte-McClure*, 776 F.3d at 103 ("Contrary to the Ninth Circuit's implication that *Oran compels* a conclusion that Item 303 violations are never actionable under 10b-5, *Oran* actually suggested, without deciding, that in certain instances a violation of Item 303 *could* give rise to a material 10b-5 omission.") (italics in original). In its view then, *Oran* did not hold that

Item 303's disclosure requirements are wholly irrelevant to the equation, but instead that they are separate lines of inquiry, one dealing with a duty to disclose and another dealing with the broader notion of materiality. That the specific information required by Item 303 ("known trends or uncertainties") are subject to a different standard ("reasonably expects") than the materiality standard applicable to wider array of information subject to Section 10(b) claims ("probability/magnitude") appeared to be of no legal moment. "That is, a plaintiff must first allege that the defendant failed to comply with Item 303 in a 10-Q or other filing. Such a showing establishes that the defendant had a duty to disclose. A plaintiff must then allege that the omitted information was material under *Basic's* probability/magnitude test, because 10b-5 only makes unlawful an omission of 'material information' that is 'necessary to make . . . statements made . . . not misleading." *Stratte-McClure*, 776 F.3d at 103.

Thus for example, in *Ind. Pub. Retirement Sys. v. SAIC, Inc.*, 818 F.3d 85 (2nd Cir. 2016), the Second Circuit reversed a district court's dismissal and analyzed the issue under this two-step approach, first finding a duty to disclose the information at issue as a "known trend" under Item 303 and second, finding it was alleged to be sufficiently material, in addition to satisfying the other requirements of a Section 10b claim (*e.g.*, scienter). 818 F.3d at 94-96.

It is clear from the foregoing that there is a circuit split on an important issue. But before I address whether the circuit split justifies an interlocutory appeal, there is an initial predicament; the circuit split was not discussed in depth in my Opinion and Order. This is unsurprising given it was not squarely raised in the briefing. This is also

why ZBH's present motion is styled as a motion to amend my original Opinion and Order, as an interlocutory appeal may only be taken on a legal question that is actually addressed by a district court. In any event, the matter has now been fully briefed for the court, and notwithstanding the haphazard way it got here, I will now substantively address the legal issue that led to the circuit split and what the ramifications of it are for a Section 1292(b) motion.

No one can reasonably dispute that the issue of whether a securities fraud action can be based on an Item 303 violation is a question of law. But whether the issue is "contestable" is a much closer question. For reasons that I will discuss in a moment, I firmly believe that the Second Circuit's approach is a much sounder approach, and it is one the Seventh Circuit is likely to take. For starters, although the Seventh Circuit has not confronted the question presented in *Oran*, *In re NVIDIA*, and *Stratte-McClure*, it has already signaled agreement with what has become the Second Circuit's approach. In *Gallagher*, the duty to disclose alleged was based on Item 303. *Gallagher*, 269 F.3d at 810 ("Plaintiffs rely principally on Item 303(a)(3)(ii) of Regulation S–K"). And while the complaint was dismissed on another basis, the Seventh Circuit did not indicate or suggest any qualms or reason why Item 303 could not be the source of a duty to disclose. *See Gallagher*, 269 F.3d at 808. ("We do not have a system of continuous disclosure. Instead firms are entitled to keep silent (about good news as well as bad news) unless positive law creates a duty to disclose."). Indeed, the court's holding in that *Gallagher* was central to my opinion on the motion to dismiss in this case, and its receptivity to Item 303 as a basis for disclosure helped satisfy me that plaintiffs had

sufficiently stated a claim here.

The Second Circuit's approach also finds considerable support in the Supreme Court's securities law jurisprudence. First, categorically excluding Item 303 as a basis for a securities fraud claim (which is what the Ninth Circuit's opinion does) strikes me as an overly rigid approach. The Supreme Court has rejected similarly rigid modes of analysis in other securities fraud cases through its embrace of a broad understanding of materiality. *E.g., Basic*, 485 U.S. at 236 ("Any approach that designates a single fact or occurrence as always determinative of an inherently fact-specific finding such as materiality, must necessarily be overinclusive or underinclusive."); *Matrixx Initiatives*, 563 U.S. at 30 ("We conclude that the materiality of adverse event reports cannot be reduced to a bright-line rule."). And it did so specifically to avoid "collaps[ing] the materiality requirement into the analysis of defendant's disclosure duties." *Basic*, 485 U.S. at 240, n.18 ("Devising two different standards of materiality, one for situations where insiders have traded in abrogation of their duty to disclose or abstain (or for that matter when any disclosure duty has been breached), and another covering affirmative misrepresentations by those under no duty to disclose (but under the ever-present duty not to mislead), would effectively collapse the materiality requirement into the analysis of defendant's disclosure duties.").

Second, the Supreme Court has long held that a duty to disclose is a distinct element of a Section 10(b) claim when the claim is predicated on fraudulent silence, as opposed to affirmatively false statements. *See, e.g.*, *Chiarella v. United States*, 445 U.S. 222, 232 (1980) (noting that "a duty to disclose" is "the element required to make silence

fraudulent" in a Section 10(b) claim). The Second Circuit's two-part approach

recognizes this, whereas *In re NVIDIA* merges duty and materiality into a single

element when Item 303 is at play.

In sum, I think the Second Circuit's approach is far more persuasive than the

approach taken by the Ninth Circuit in *In re NVIDIA* and the issue is not particularly

contestable. But even if I were to find that the issue is contestable, ZBH's motion must

nonetheless be denied because ZBH has failed to carry its burden on how resolution of

this issue would be controlling so as to advance this litigation to such an extent to

warrant an interlocutory appeal. Let's suppose that the Seventh Circuit were to agree

with defendants and adopt *In re NVIDIA*'s holding. That would obviously dispose of

some of plaintiffs' claims. Specifically, plaintiffs could not make a claim that Item 303

imposes a duty to disclose for purposes of Section 10(b)—*i.e.* plaintiffs' Section 10(b)

claims for statements made in the registration statements, preliminary prospectuses and

prospectuses relating to the stock offerings occurring in June and August 2016. [*See* DE

60 at ¶¶ 271-293, 315-322.] But numerous other claims would survive regardless.

First, there would still be plaintiffs' Securities Act Section 11 claims (based upon

statements made in registration statements only) relating to the June and August 2016

stock offerings. [*See* DE 60 at ¶¶ 407-415, 454-459, 476-481.] Those claims are narrower

than the Exchange Act claims, but they concern the same underlying events and

subjects. Second, and more importantly, even if Item 303 were removed as the basis for

a duty to disclose, plaintiffs also have other Section 10(b) claims which would be

unaffected. These include the allegedly affirmative false statements made during a

October 31, 2018 investor conference call after the FDA's inspection was well underway, which plaintiffs claim was a short-lived attempt at a coverup by ZBH. In addition, there were numerous allegedly false statements made by ZBH and certain individual defendants outside the context of required securities filings relating to projected earnings and purported merger synergies being achieved. [*E.g.* DE 60 at ¶¶ 269-270, 294-308, 323-326, 327-341.]

In the Opinion and Order I found that all of these had been sufficiently pleaded to state a Section 10(b) claim and that none could be protected by the PSLRA's safe harbor provision at the motion to dismiss stage. And none of those claims are rooted in Item 303. Instead, they are rooted in the "ever-present duty not to mislead." *Basic*, 485 U.S. at 240, n.18. These claims may be more difficult to prove and whether they will survive summary judgment is a matter that will have to be determined, but they would nevertheless be live claims unaffected by elimination of Item 303 as a basis for liability and would proceed regardless of any interlocutory appeal.

This brings me to the final, and more practical point: whether the case would be narrowed from a case management or discovery perspective if ZBH were to prevail on its interlocutory appeal of this issue. ZBH has failed to convince me that is the case. There is simply too much overlap between the claims ZBH is trying to have excised from the case and those which would remain irrespective of the Seventh Circuit's ruling on the narrow Item 303 issue. At the January 28 hearing, counsel for ZBH raised a number of concerns including the truism that discovery in securities law cases is wide-ranging and costly, that plaintiffs have indicated they intend to seek nearly a decade's

worth of electronic records, that plaintiffs intend to and have been given leave to take more than two dozen depositions, and that there wasn't any evidence that defendants are trying to run out the clock by seeking an interlocutory appeal (*e.g.* if ZBH were heading to bankruptcy or dissolution). All of that may be true, but it is beside the point unless ZBH can show that discovery would be narrowed by a successful appeal of the Item 303 issue. Yet ZBH did not identify any witnesses, categories of documents, or subject matter which would no longer be relevant solely as a result of axing the Item 303-based Section 10(b) claims.

As noted, the Section 11 claims relating to the same registration statements as the Item 303-based Section 10(b) claims would remain in place. And there would still be several Section 10(b) claims premised on statements made by ZBH and its management which plaintiffs have alleged to be false or misleading. Given the expansive nature of discovery allowed under the Federal Rules of Civil Procedure, it is difficult to see how this case would be substantially narrowed or sped up in advance of summary judgment by an exclusion of Item 303 as a basis for a duty to disclosure. *See In re Worldcom, Inc. Sec. Litig.*, 2003 WL 22533398, at *7 (S.D.N.Y. Nov. 7, 2003) ("Even if the SSB Defendants prevailed on appeal with respect to all three of the Exchange Act claims, however, Citigroup and SSB would remain as defendants on the two Securities Act claims arising from the two WorldCom multi-billion dollar bond offerings. The litigation, with Citigroup and SSB among its many defendants, would continue.").

In sum, the inability to articulate how discovery and the scope of the case would be meaningfully narrowed by a successful appeal is fatal to ZBH's bid for an

interlocutory appeal. Nor can I see how there would be. I do not make this decision lightly and do not discount the enormity of what is at stake for ZBH in this case. But if "[t]he crux of [ZBH's] argument, however, is that because this case is very important to them, they very much desire appellate review of the denial of their motion to dismiss the Complaint," then it is not enough. *In re Worldcom* 2003 WL 22533398, at *9. "That is not the standard for a Section 1292(b) motion." *Id.*

## II. Whether Plaintiffs May Bolster Their Allegations Through References to Factual Allegations Made in Other Pending Lawsuits.

In connection with its motion to dismiss, ZBH filed a motion to strike certain allegations contained within plaintiffs' SAC. Specifically, ZBH sought to strike references and facts within the SAC which were based upon allegations from the complaints in other lawsuits which were pending before other judges in this district. *See Barney v. Zimmer Biomet Holdings, Inc.*, No. 3:17-cv-616-JD-MGG (N.D. Ind.); *Martin* v. *Zimmer Biomet Inc., et al.,* No 3:17-cv-615-JD-MGG (N.D. Ind.)[2] Plaintiffs relied upon these allegations primarily to establish the heightened level of scienter required in securities fraud cases. The test for scienter "is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets the standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) ("*Tellabs II*"). This is frequently a daunting task, requiring a careful balancing of inferences in favor of both parties, and is often a hurdle

---

[2] The Martin case has since been voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1). On November 26, 2018, the Barney Complaint was dismissed, in part, with leave to amend, and Barney has filed a proposed fourth amended complaint.

which securities fraud class action plaintiffs fail to clear.

In my Opinion and Order, I denied the motion to strike and considered plaintiffs' allegations based on the Barney and Martin Complaints in determining whether plaintiffs had sufficiently alleged scienter. [DE 119 at 24.] These allegations helped plaintiffs satisfy the PSLRA's heightened pleading standard, but they were by no means the only allegations in support. ZBH contends doing so was in error and asks that I certify the following question for interlocutory appeal: "whether plaintiffs can satisfy their pleading obligations under the Private Securities Litigation Reform Act of 1995 ("PSLRA") by relying upon allegations in an unadjudicated third-party complaint." [DE 121 at 1.]

On the first factor, ZBH establishes that this is a question of law. ZBH is not seeking to have the Seventh Circuit weigh in and conduct its own holistic review of plaintiffs' scienter allegations but instead, only whether or not this subset of the allegations is *per se* immaterial (and thus should be stricken) on account of the Second Circuit's decision in *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) and related district court cases from within and outside the Seventh Circuit. So I agree with ZBH that this is a straight forward question of law thus meeting the first requirement for certification of an issue for interlocutory appeal.

But ZBH's proposed question for certification fails the remaining factors. On contestability, it is true that some district courts have read *Lipsky* broadly and adopted ZBH's position. *See, e.g., In re Rough Rice Commodity Litig.*, 2012 WL 473091, at *4 (N.D. Ill. Feb. 9, 2012). But the *In re Rough Rice* court seemed to accept a broad reading of

*Lipsky* without much, if any, critical analysis. And as explained in my Opinion and Order [DE 119 at 21-24] and other district court cases, the reasoning ZBH urges me to adopt does not pass muster. *See, e.g., In re Herbal Supplements Mktg. & Sales Practices Litig.*, 2017 WL 2215025, at *6 (N.D. Ill. May 19, 2017) ("*Lipsky*—which is nonbinding authority—has limited application to the current case, which does not deal with a consent judgment.")**;** *Marvin H. Maurras Revocable Tr. V. Bronfman*, 2013 WL 5348357, at *15-17 (N.D. Ill. Sept. 24, 2013) (disagreeing with *Rough Rice* and questioning whether a broad reading of *Lipsky* is at all well-established); *In re Fannie Mae Sec. Litig.*, 891 F. Supp. 2d 458, 471 (S.D.N.Y. 2012) ("*Lipsky* does not, as defendants argue, stand for the proposition that any factual allegation derived from a government investigation or pleading must be stricken from a private plaintiff's complaint.").

Given the clear weight of authority and holding from cases which have fully analyzed the issue, perhaps I was too charitable in noting that ZBH's argument on this point was not unreasonable and made the issue seem more contestable that it is. [*See* DE 119 at 22 ("It is not unreasonable to say that, read broadly, *Lipsky* could support a *per se* rule, but my reading of the case is not so broad.").] At bottom, it is hard to say how facts taken from the allegations of another case's complaint are materially different from alleging facts from any other third-party source, such as a leaked internal document, a news article, an academic journal, a witness interview, or even an SEC filing, so long as counsel is within the confines of Federal Rule of Civil Procedure 11(b). Indeed, plaintiffs have suggested that because they now possess the actual documents (*e.g.*, Barney's resignation letter) on which the Barney complaint was based, this issue is practically

moot.  This dovetails nicely with a point made in *Lipsky*. Whether the information is considered relevant in a complaint and capable of consideration at the motion to dismiss stage has no bearing on whether such information will be before the jury at trial. *Lipsky¸* 551 F.2d at 894 ("Quite frankly, we do not understand how Darin is harmed by the elimination of the SEC references. If the trial judge finds that testimony or documents from the SEC are admissible on the 'best efforts' question, surely Darin need not allude to this evidence in his complaint as a condition for its admission.").

A few conflicting district court opinions and a forty-year-old out-of-circuit decision on very different facts does not satisfy Section 1292(b)'s contestability requirement. The clear distinguishing aspects of *Lipsky*, in addition to its very narrow holding does not create a "substantial ground for difference of opinion" in this context. *Manitowoc Cranes LLC v. Sany Am. Inc.*, 2018 WL 582334, at *2 (E.D. Wis. Jan. 29, 2018) (ruling that a distinguishable case is "not a substantially conflicting authority that presents a basis for a substantial likelihood of reversal"). Certification pursuant to Section 1292(b) was not intended to cover every legal issue in which there is not binding precedent or let alone every legal issue as to which reasonable minds could differ. *Hollinger Intern., Inc. v. Hollinger, Inc.*, 2005 WL 327058, at *3 (N.D. Ill. Feb. 3, 2005) ("The movant thus may not prevail by simply showing a 'lack of judicial precedent' or that the issue is one of first impression."); *In re Demert & Dougherty, Inc.*, 2001 WL 1539063, at *6 (N.D. Ill. Nov. 30, 2001) ("[T]he mere lack of judicial precedent on the issue does not establish substantial ground for difference of opinion."). Otherwise the exception would swallow the rule.  Circuit courts would be overrun with interlocutory appeals grinding

litigation to a halt in the process. Something more is required.

While the lack of true contestability dooms the interlocutory appeal, I will speak briefly on the remaining factors. First, this issue would not be controlling in the case. The allegations based on the Barney and Martin complaints undoubtedly made my job easier in conducting the balancing and holistic review of scienter allegations mandated under *Tellabs II* (and finding in favor of plaintiffs), but they were not the only allegations of scienter. Far from it. Plaintiffs also relied on statements within documents obtained from the FDA, the broad findings of ZBH's internal audits, and detailed allegations from two additional confidential witnesses. And while all of these facts were obviously intertwined and each helped bolster one another (that is after all the purpose of a holistic review), in the unlikely event the Seventh Circuit held that all facts gleaned from allegations in other cases' complaints are *per se* immaterial (a holding much broader than even *Lipsky*), that would not automatically result in ZBH prevailing on the scienter issue.[3] Furthermore, while I don't want to engage in hypotheticals or put the cart before the horse, plaintiffs have convincingly shown that they now possess the underlying documents supporting the Barney complaint and thus make reliance on it less important. Thus, early resolution by the Seventh Circuit on this issue would not

---

[3] After filing its motion, ZBH filed a Notice of Supplemental Authority [DE 145.] The authority at issue is a recent decision in Barney case dismissing, without prejudice, a constructive discharge claim. And while the court found the allegations could not sustain a claim for constructive discharge because Barney failed to plead that being told to commit securities fraud did not make her continued employment untenable. The court said nothing on the veracity of whether Barney was ordered to commit securities fraud by her bosses (some of whom are defendants in this case). Thus it has no relevance or impact on the issue before me.

likely materially advance the outcome of the litigation or streamline it.

Second, even if ZBH were to obtain certification and succeed on this issue before the Seventh Circuit, I have strong doubts this would speed the litigation up. Not only would discovery likely be further delayed (in a case filed over two years ago), plaintiffs would presumably take another stab at amending their complaint to further bolster their scienter allegations with other facts. At best, we'd be right where we are today. And the Second Circuit in *Lipsky* said, in the end, this issue is likely irrelevant because of course more than mere allegations will be necessary to survive summary judgment or win at trial. As with all lawsuits, if the admissible evidence does not live up to the allegations, plaintiffs won't win their case.

### Conclusion

For the foregoing reasons, ZBH's Motion to Amend the Court's September 26, 2018 Opinion and Order to Include a Certification Under 28 U.S.C. § 1292(b) and Motion to Stay Proceedings Pending Appeal [DE 120] is DENIED.

In addition, plaintiffs' Motion for Leave to File Supplemental Factual Exhibits [DE 165], Motion to Seal Exhibits 1-3 of the Motion for Leave to File Supplemental Fact Exhibits [DE 167], and Motion for Order Allowing Parties to Refer to Confidential Documents at Hearing [DE 171] are GRANTED. The portions of the January 28, 2019 hearing which were under seal shall remain so.

SO ORDERED on February 20, 2019.

/s/ Philip P. Simon_____
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT