UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RAJESH M. SHAH, *et al* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 3:16-cvr-815-PPS-MGG |
| ) | |
| ZIMMER BIOMET HOLDINGS, INC., ) | |
| *et al* ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This is a securities fraud case and putative class action. After roughly three-and-a-half years of litigation, the parties have moved the Court to approve a proposed class settlement to resolve the litigation. Plaintiffs filed their Unopposed Motion for: (I) Preliminary Approval of the Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice of the Settlement on April 14, 2020. [DE 246.] On May 13, 2020, the Court held a hearing[1] where the parties presented the proposed settlement and answered questions from the Court. [DE 250.] At the conclusion of the hearing, I indicated it was my intention to grant preliminary approval of the settlement so that the process of notice to the class and claims processing could begin without

---

[1] Due to the ongoing COVID-19 pandemic and its indefinite duration, and in accordance with General Orders of the U.S. District Court for the Northern District of Indiana, an in-person hearing on the motion was not safe or feasible and the hearing in this matter was held telephonically using a conference line listed on the docket and which members of the public were able to call into. [*See* DE 247.]

1

delay. This Opinion and Order formally grants the motion and sets a date for a final fairness hearing of the proposed class settlement in this case, as discussed below.

## Background

This opinion assumes familiarity with the facts of the case, its history and the underlying claims.[2] Suffice it say, however, the principle allegations are that Defendant Zimmer-Biomet Holdings, Inc. ("ZBH"), and its senior executives, officers and directors (the "Individual Defendants") misled the investing public over a period of several months in 2016 by failing to disclose certain required information and making other misleading statements. Plaintiffs allege that these misstatements and omissions caused ZBH's stock price to be artificially inflated and that persons who traded in ZBH shares from June 7, 2016 to November 7, 2016 were defrauded as a result. Plaintiffs first filed suit on December 2, 2016, and since then there have been several substantive amendments to the complaint.

On September 26, 2018, I granted, in part, and denied, in part, Defendants' motions to dismiss (there were four filed on behalf of different subsets of the Defendants) the Second Amended Complaint. [DE 119.] I dismissed some claims against ZBH and the Individual Defendants and fully dismissed certain Defendants (eighteen private equity funds) from the case. [*Id.*] Additional motion practice followed in which ZBH sought an interlocutory appeal [DE 120], which I denied [DE 183], and

---

[2] Readers interested in a more detailed set of Plaintiffs' allegations can review my prior opinion on the Defendants' motions to dismiss which contains a more detailed timeline and summary. [DE 119 or *Shah v. Zimmer Biomet Holdings, Inc.,* 348 F. Supp.3d 821 (N.D. Ind. 2018).]

the case proceeded to discovery and the filing of a Motion for Class Certification [DE 193] which, as of this date, remains unresolved. Defendants have contested liability throughout the litigation, but the parties have decided to set aside their differences and settle the case. They are now moving jointly to have that settlement approved. [DE 244.] In doing so, Defendants offer up a Settlement Fund of $50 million to pay class members' claims on a pro rata basis, pay the costs of administering the Settlement Fund, and to compensate Plaintiffs' counsel for their work. That's a lot of money, but is it enough?

**Analysis**

Federal Rule of Civil Procedure 23 is the foundation of and governs class action lawsuits, including class settlements. Rule 23(e) requires court approval of any settlement which dismisses a class action lawsuit. *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). Before approving a class settlement, I must (1) certify a proposed class for settlement which satisfies the class requirements of Rule 23(a) and Rule 23(b); and (2) be satisfied that the proposed settlement is "within the range of possible approval" and fair. Fed. R. Civ. P. 23(e)(1)(B).

On the settlement class certification requirement, Rule 23(a) has four specific requirements that must be met before a class may be certified. Those are commonly referred to as (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2) commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed.

3

R. Civ. P. 23(a). In addition, the class must fit within and satisfy one of the subsections in Rule 23(b). Here, Plaintiffs seek to certify a class pursuant to Rule 23(b)(3). That's generally the most complicated type of class action and has the most demanding requirements. In order to certify a class under Rule 23(b)(3), I must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These are known as the predominance and superiority requirements. Thus, there are six distinct (although at times related) requirements.

In determining the proposed settlement's potential adequacy and fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014); Fed. R. Civ. P. 23(e)(2) (enumerating factors for courts to consider in determining whether a settlement is fair, reasonable and adequate). This mirrors the analysis that I will have to engage in before granting final approval of the settlement, although generally the demands are lower at this preliminary stage when there are no objections to the settlement. *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 589 (N.D. Ill. 2016) ("[A]t the preliminary approval stage, the extent of the district court's inquiry into the

appropriateness of class certification and the reasonableness of the settlement terms depends, as it must, on the circumstances of the individual case.").

### A. The Proposed Settlement Class Satisfies Rule 23(a) and Rule 23(b)(3)

The first thing I must be satisfied of are numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Defendants vigorously contested class certification at the time Plaintiffs first sought it (focusing on the predominance requirement under Rule 23(b)(3)), but they've now acquiesced, as they too would like to see the class certified in order to effectuate settlement. But I have an independent obligation to find that all of Rule 23's requirements are satisfied, even if the parties are no longer contesting them. Here, Rule 23(a)'s requirements are clearly satisfied.

First, numerosity is practically a foregone conclusion in a large securities class action like this. "The issue ordinarily receives only summary treatment … and often is uncontested." Rubenstein, William B., Ed., Newberg on Class Actions § 3:12 (5th ed. 2019); *id.* ("[I]n class actions involving nationally traded securities, courts generally presume that the numerosity requirement is met."); *see also Teachers' Ret. Sys. of La. V. ACLN Ltd.*, 2004 2997957, at *3 (S.D.N.Y. Dec. 27, 2004). Second, there are several questions of law and fact common to the class in a case like this in which the focus is what ZBH was required to tell the market, what it said, and whether those statements were fraudulent. Commonality is thus satisfied. *Schleicher v. Wendt*, 618 F.3d 679, 681 (7th Cir. 2010) ("Whether statements are false is one common question. Whether the falsehoods are intentional (*i.e.*, whether each defendant acted with the required state of mind) is another. Whether the falsehoods affect the stock's price is a third."). Third,

typicality is present here as each of the named plaintiffs traded in ZBH shares during the class period which is a description of the entire class in a nutshell. Fourth, is the adequacy of the named plaintiffs as representatives. The key here is to be assured that the class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied so long as the class representatives do not have clear conflicts of interest with the absent class members and are willing to vigorously pursue the litigation in the absent class members' stead. "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed. 2019). There was no evidence of a conflict presented at the motion for class certification stage, and there's no reason to think there is one here now. The named plaintiffs in this action have continued to pursue the case in conjunction with class counsel and seemed to have done that more than adequately.

With all four of Rule 23(a)'s requirements satisfied, it is time to move on to Rule 23(b). As mentioned, Plaintiffs seek to certify the settlement class under Rule 23(b)(3), which is appropriate when "questions of law or fact common to class members predominate over any questions affecting only individual members" and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Furthermore, by proceeding under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances" including notice to individual class members that can reasonably be identified so as to give class members the ability to opt out if they would rather pursue their claims

individually and not settle. *See* Fed. R. Civ. P. 23(c)(2)(B). If they do not opt out, an approved settlement will otherwise bind all class members, even if they do not submit a claim.

"The predominance inquiry focuses on whether a proposed class is sufficiently cohesive to warrant adjudication by representation. It is akin to, but ultimately a more demanding criterion than, the commonality inquiry under Rule 23(a)." *In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 99 (S.D.N.Y. 2016) (citations and quotation marks omitted). Here, there are certainly common questions of law and fact which predominate over individual issues. We are dealing with a publicly traded stock on the New York Stock Exchange and whether statements made by ZBH to the investing public were fraudulent. That is the main question in this case, and it is common to all members of the class. Furthermore, because this is a securities fraud case, reliance (often a thorny, individualized issue any fraud case) does not present an issue because plaintiffs may avail themselves of the fraud-on-the-market theory. *See generally Basic Inc. v. Levinson*, 485 U.S. 224 (1988).

As for class-wide damages and determining an individual class member's damages, plaintiffs have offered an allocation model that is applicable across the class to account for the price, date of a trade, and other factors. Individualized damages are the norm in a securities fraud case (after all, it would be rare for multiple class members to sell the same number of shares at the same time at the same price), and their existence does not defeat predominance. In other words, the damages allocation model,

based on an out-of-pocket damages theory, can be applied across the class, and it does not present a predominance problem.

Finally, superiority is satisfied. Securities fraud claims proceeding as class actions is almost always preferable to a multitude of individual suits because recovery is generally tied to share price. All but the largest shareholders likely stand to recover a few hundred dollars or less. When the stakes are that low, no rational plaintiff would pursue their cause of action solo, and no rational lawyer would take the case on contingency. *See Carnegie v. Household Int'l*, 376 F.3d 656, 661 (7th Cir. 2004). And because we are dealing with a settlement class, I need not concern myself with concerns about how a trial in this case would be managed. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried would present intractable management problems for the proposal is that there be no trial."). Thus, a class action is more efficient and superior to other possible methods of adjudication.

**B. The Proposed Settlement is Within the Range of Possible Approval.**

Having found that the requirements to certify a settlement class are met, it is time to do the preliminary review of the substance of the proposed settlement to determine whether it is within the range of possible approval and fairness. At bottom, the settlement is a big bucket of money; $50,000,000.00 to be exact, to be divided up amongst members of the class who make valid claims, class counsel and the administrator who will handle sending out the notice of the settlement, determining the

validity of claims, mailing checks, etc. Thus, the question at this stage is whether $50 million is within the range of possible approval under the circumstances? It plainly is.

As previously found in my opinion and order on Defendants' motions to dismiss, Plaintiffs' operative complaint sufficient satisfied the pleading requirements of the Federal Rules of Civil Procedure and more importantly, those of the Private Securities Litigation Reform Act ("PSLRA") which requires heightened pleading standards in securities fraud cases like this one. [DE 119.] But we never got to the summary judgment stage when Plaintiffs would have faced a hurdle much higher than even the PSLRA's heightened pleading standards. Prevailing at that stage was thus no sure thing for Plaintiffs. Indeed, fact discovery in this case was underway but not complete, and thus it is even more of an unknown. Settling now avoids the costs associated with those additional stages of litigation.

Plaintiffs further submit that their expert has figured out that their absolute maximum potential recovery for the entire class if they succeeded on all claims is $625 million. The settlement amount thus represents roughly 8% of Plaintiffs' maximum possible damages. But receiving that maximum amount would require Plaintiffs to not only prevail at summary judgment, but then take their claims to trial, win on liability across the board, and then convince a jury to award the highest possible amount in damages. Any hiccup or win for Defendants along the way would have reduced that total possible amount of recovery. For example, Plaintiffs note that loss causation could present a problem for them relating to the October 31, 2016 statements from ZBH about the cause of the company's revenue misses—although obviously they don't concede the

9

issue. [DE 245 at 15.] If Plaintiffs failed to prove loss causation on those statements, their recoverable damages would be reduced to $95 million. In that scenario, the settlement would represent more than 50% of the potential maximum recovery at trial. Like most things in life, neither of those scenarios was a sure thing, and the class could obviously have recovered nothing too. It's inherently unpredictable and unknowable at this stage of the game. *See Great Neck Capital Appreciation Inv. Partnership, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409 (E.D. Wis. 2002) ("Shareholder class actions are difficult and unpredictable, and skepticism about optimist forecasts of recovery is warranted."). Finally, Plaintiffs point to expert economic analysis from a firm called Cornerstone Research which reports that in 2019, the median percentage recovery in securities class action settlements was 4.8%: with cases alleging $500-$999 million settling at a median of 3.3% and cases alleging $75-$149 million settling at a median of 9.4%. [DE 246-2.] Again, the settlement amount in this case ($50 million) represents roughly 8% of the absolute maximum Plaintiffs say they could have recovered ($625 million). It thus is at the high end of securities class action settlements which further suggests it is well within the range of fairness.

Beyond just the numbers and the complex and unknowable future possible developments in the case, the other relevant factors all support the settlement being within the range of reasonable resolutions. It was negotiated at arms' length between experienced counsel on both sides and with the assistance of an experienced mediator. Counsel on both sides are in favor of the settlement, and thus far, there have been no objections or opposition to the settlement. All of these factors weigh in favor of

preliminary approval. *See Synfuel Techs., Inc. v.DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (listing factors for courts to consider in determining preliminary approval).

Thus, $50 million represents a number that is within the range of reasonable possibilities for settlement of the case considering it avoids the money, time, and uncertainty associated with years of further litigation, including expensive fact discovery, complex summary judgment briefing, a multi-week trial, and likely followed by a lengthy appeal. In other words, it's far from unreasonable to say that $50 million in the hand is worth $625 million in the bush.

But that only analyzes the numbers on a macro level. As mentioned, what each individual class member would individually be entitled to is determined by an allocation model based on when and at what price the class member traded in ZBH stock during the class period. [DE 246-1 at 75-82.] The allocation model is admittedly complex, but it seems to reach a reasonable result and allocate a reasonable amount to each investor based on a pro rata basis based on their out-of-pocket damages. [DE 245 at 18.] And under the allocation model, all class members are treated the same which is obviously important for any determination of overall fairness. The exact amounts each class member will receive are to be determined based on the number of valid claims, as well as how much of the Settlement Fund goes to administering the settlement and attorney's fees.

Pursuant to the terms of the settlement, Plaintiffs' class counsel will be seeking a fee award that will be no more than 33.3% of the total settlement fund and litigation

expenses up to $1.9 million. [DE 246 at 18-19.] At the hearing, counsel indicated that while they are still preparing final numbers (and doing more work on behalf of the class) and no set amount has been finalized, they anticipate seeking the maximum 33.3% limit in attorney's fees as well as the $1.9 million in litigation expenses. That translates to roughly $18.4 million to class counsel for fees and expenses. That's a large number, and I'll reserve any judgment as to its reasonableness until a motion for fees is before me, but it is not outside of the range of reasonableness for purposes of preliminary approval. The final number will be determined in conjunction with final approval of the class settlement.

Importantly, the award of fees is independent of approval of the settlement and the settlement cannot be backed out of by Plaintiffs based on the amount of attorney's fees awarded by the Court. Further, Defendants are only able to back out of the settlement under very limited circumstances. While the terms of the agreement have not been disclosed, the parties have agreed that Defendants can back out of the settlement if a certain number of class members opt out during the claims processing time. Basically, if enough members of the class reject the settlement that the lawyers negotiated on their behalf, the Defendants will not be bound by its terms if they don't want to be. All of this supports a finding that the settlement is within a reasonable range.

I also find that the proposed Notice to class members of the settlement is adequate. Again, for Rule 23(b)(3) classes, the Notice must be "the best notice that is practicable under the circumstances" and seek to give notice to all individual class members that can reasonably be identified. Fed. R. Civ. P. 23(c)(2)(B). Plaintiffs have

12

proposed providing notice primarily through a physical mailing to individual class members. At the hearing, they indicated that based on ZBH's records, as well as those of brokerage firms and other nominees for beneficial purchasers of securities, they will be able to send notice to all class members. [DE 244 at 23.] In addition, the Notice will appear on a website dedicated to the settlement and a Summary Notice will be published in *Investor's Business Daily* and transmitted over the *PR Newswire*. I find that this is sufficient. Furthermore, the Notice submitted by the parties satisfies the requirements of Rule 23(c)(2) and the PSLRA. Fed. R. Civ. P. 23(c)(2) (outlining six requirements for notice); 15 U.S.C. §§ 78u-4(a)(7), 77z-1(a)(7) (listing six additional requirements). During the hearing, counsel also indicated that they would include information in the Notice about the possibility that due to the ongoing COVID-19 pandemic, the final fairness hearing may have to occur telephonically, but at the same date and time as if it were occurring in person.

There's one final housekeeping issue to address as well: appointment of class counsel pursuant to Rule 23(g). Plaintiffs moved for such an appointment as part of their motion for class certification filed in April of 2019. [DE 193.] But with the case now settled, the prior Motion to Certify the Class is moot. But because I am certifying a settlement class, I must appoint class counsel, which has not yet happened in this case. *See* Fed. R. Civ. P. 23(g). To determine this I must consider (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the

13

resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Here, those factors are all easily satisfied by Plaintiffs' counsel at Glancy Prongay & Murray LLP. They are experienced securities class action litigators and have shown their skill in this case at all stages. [*See* DE 195-3 at 2-4.]

ACCORDINGLY: Plaintiff's Motion for Class Certification [DE 193] is DENIED as MOOT, except that Plaintiff's Motion to Be Appointed Class Counsel [also at DE 193] is GRANTED; Glancy Prongay & Murray LLP is APPPOINTED class counsel for the Settlement Class certified below; Plaintiffs' Unopposed Motion for: (I) Preliminary Approval of the Class Action Settlement; (II) Certified of the Settlement Class; and (III) Approval of Notice of the Settlement [DE 244] is GRANTED; and the Court:

(1) Preliminarily approves the terms of the Settlement as set forth in the Stipulation and Agreement of Settlement [DE 246-1];

(2) Certifies a Settlement Class consisting of all persons or entities who, between June 7, 2016 and November 7, 2016, inclusive, purchased or otherwise acquired ZBH Common Stock and/or ZBH Call Options, and/or wrote ZBH Put Options, and were damaged thereby. Included in the Settlement Class are all persons or entities who purchased or otherwise acquired ZBH common stock pursuant to and/or traceable to ZBH's public offerings on or around June 13, 2016 and/or ZBH's public offering on or around August 9, 2016 and were damaged thereby. Excluded from the Settlement Class are Defendants (both current and dismissed); members of the immediate families of each of

14

the Individual Defendants; the parents, subsidiaries, assigns, successors and predecessors of any Defendants(both current and dismissed); (iv) any persons who served as partners, control persons, officers, and/or directors of any Defendants (both current and dismissed) during the Settlement Class Period and/or at any other relevant time; (v) Defendants' liability insurance carriers; (vi) any firm, trust, corporation, or other entity in which any Defendant (both current and dismissed) has or had a controlling interest; and (vii) the legal representatives, heirs, successors-in-interest or assigns of any such excluded party; provided, however, that any Investment Vehicle shall not be excluded from the Settlement Class. Also excluded are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court[3];

(3) Approves the form and content of the Notice, Claim Form, and Summary Notice, attached as Exhibits A-1, A-2, and A-3 to the Stipulation and Agreement of Settlement [DE 246-1], subject to the inclusion of information relating to the potential for the final Settlement Hearing to occur telephonically due to the ongoing COVID-19 crisis in the Notice and Summary Notice;

---

[3] All defined terms, whether defined separately in this Opinion and Order or not, shall have the same meaning as given to them in the parties' Stipulation and Agreement of Settlement [DE 246-1], which is incorporated by reference to this Order.

(4) Finds the schedule and procedure for distribution of the Notice and Claim Form and publication of the Summary Notice constitute the best notice practicable under the circumstances, and complies with the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995; and

(5) Adopts the following schedule and procedures in connection with notice, claims, and final approval of the settlement:

| | |
|---|---|
| Deadline for mailing the Notice mailed to Settlement Class Members and posting the Notice and Claim Form on the Settlement Website (the "Notice Date") | June 19, 2020 (20 business days after entry of the Preliminary Approval Order) |
| Deadline to publish the Summary Notice | July 6, 2020 (10 business days after the Notice Date) |
| Deadline for Plaintiffs to file Motion for Final Approval and Application for Fees and Expenses | July 30, 2020 (35 calendar days prior to the Final Fairness Hearing) |
| Deadline for class members to submit any objections | August 13, 2020 (21 calendar days prior to the Final Fairness Hearing) |
| Deadline for class members to request exclusion (or "opt out") of the class settlement | August 13, 2020 (21 calendar days prior to the Final Fairness Hearing) |
| Deadline for filing any reply papers | August 27, 2020 (7 calendar days prior to the Final Fairness Hearing) |
| Final Fairness Hearing | September 3, 2020 at 1:00 p.m. CDT |
| Deadline for submitting Claim Forms (must be postmarked by) | October 19, 2020 (Monday following 120 calendar days from Notice Date) |

SO ORDERED on May 21, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT